Good morning, Your Honors. May it please the Court, my name is Kathleen Sullivan and I represent Continental. This case involves a $17.5 million award against an insurer to assignees of an insured dentist who defrauded his patients by performing unnecessary root canals. Now, even though that sort of intentional tortious conduct is not insurable, and even though Continental might have denied coverage, it did not. It accepted coverage, it did not reserve rights, and it paid out the entire $8 million limits on the malpractice policy. Nonetheless, the District Court entered judgment after jury trial against Continental for negligence and violations of the Washington State Consumer Protection Act on the ground that there was a supposed failure on Continental's part to prevent excess liability that came about when 29 out of 270 patients refused to settle within limits for the same amount as everybody else, the other 241, and instead obtained a State Court judgment against Dr. Doizend, the insured dentist. Now, I'd like to go right to two key errors of Washington law. It's a complex record, but let's go right to two key errors of Washington law that the District Court committed that require at a minimum a remand for a new trial, and those errors are the grant of summary judgment to the Doizend assignees on our fraud affirmative defense, our affirmative defense that he defrauded us by misrepresenting his fraud on his patients to us, and therefore we should have had a complete defense. That's the first legal error. Then I want to get to the comparative fault instruction. But let me go to the first one, the ruling at summary judgment that does two things. It denies summary judgment to Continental on the ground of Doizend's fraud against Continental, but it also grants summary judgment to Doizend's assignees, the plaintiffs in this case, grants them summary judgment that fraud cannot be a defense in this case. Now, that's a violation of Washington law. And let me try to rule it out. It's more to it than just that. Well, Your Honor, it was clothed in the rubric of judicial estoppel. That's correct. And judicial estoppel Why doesn't it apply here? Because, Your Honor, judicial estoppel requires an inconsistent statement, and there's no inconsistency between accepting coverage on the one hand and asserting fraud as a defense to extra-contractual liability. That's the mistake the judge made. But you had in the record what I think was troubling regarding your client was when they wanted to do more discovery, you said, oh, no, no, no, no, you don't need any of that because we're not denying coverage. And so that's incorrect, Your Honor, in the relevant sense. Look, there's other judicial estoppel factors. Did we benefit? No. We paid out all our coverage limits. Oh, you did benefit. You didn't have to turn over the claims file. We did, Your Honor. We turned over. They didn't want to turn over that file. At that time, during the discovery dispute, they didn't want to turn it over. It's very clear they didn't want to turn it over. And the district or the magistrate judge denied the motion to compel on their representation. Your Honor, all of the coverage documents were turned over after the answer. Look, they didn't plead coverage, so we said the plaintiffs didn't put coverage in dispute. Of course not. We accepted coverage. So but after the answer, there's no dispute, the documents were turned over. They were redacted for attorney-client privilege. But that goes to other judicial estoppel factors. I want to come back to the sine qua non of judicial estoppel, is we made inconsistent statements. We didn't. If you go to ER-59, you'll see that the district court said it's inconsistent to accept coverage on the one hand and then to assert the insured's fraud on the insurer as a defense to extra-contractual liability. That is error under Washington law. And without an inconsistent statement, we don't have judicial estoppel and we don't even get to prejudice. And, Your Honor, the crucial point is I want to refer you to the cases under Washington law in our blue brief at pages 24 to 25, and especially to Tudor and Tornetta and Kee Sin Kim, all of which establish that under Washington law, bad faith, negligence and the Consumer Protection Act do not exist to aid and abet fraud by insureds against their insurer. And that's exactly what was allowed to happen here because we weren't allowed to present Doizen's fraud on Continental to the jury at trial. We were smoked out. So at a minimum, you should reverse the ruling on fraud at summary judgment and remand for a new trial by reversing the grant of summary judgment to Doizen's S&Es. That's on the fraud point. Your Honor, so forget about all the discovery disputes. We don't think there was prejudice because we turned over all the documents. We don't think there was any unfair advantage because we paid our policy limits. And we don't think that there was any success in persuading the judge. So your whole point is just the district court just erred. Erred under Washington law. Just got it wrong on Washington law. Exactly, Your Honor. ER-59, ER-69, and Washington law. It's a very important policy issue for Washington law because as friendly as Washington is to insurance claims, the one absolutely bedrock principle is that the Washington law cannot be used to aid and abet fraud on an insurer. If I submit my personal property statement and I say, yeah, I had a Picasso on the wall when the house burned down, that fraud will preclude my recovering no matter how much bad faith my insurer engaged in. This is the same case in a professional liability context. You should not allow the district court to violate Washington law. But isn't asserting fraud for the doctor's representations, isn't that just the same thing as denying coverage? Not at all, Your Honor. Why not? What's the difference? Here's the thing, Your Honor. Even if we accept coverage, we can still assert fraud as a defense to extra statutory liability. Kee Sin Kim shows you that. Kee Sin Kim says we're absolutely throwing out the bad faith and statutory claims. We're sending it back to see if there's also a coverage defense. Most cases, in most cases, frankly, an insurer in our situation would not have accepted coverage, would have reserved rights. But you shouldn't allow what it's the old adage, no good deed goes unpunished. Merely because we did cover, we did accept coverage, we did pay $8 million in policy limits. The district judge erred by telling us we couldn't assert the fraud as a defense to our extra, to the extra contractual claims. That was the error, Your Honor. It's a legal error. All right. That's why you should err. So let me turn to comparative false. That's legal. Yeah, I would like to talk about that. Yes, Your Honor. Because it appears that your client proffered an instruction that was subjected to. Yes, Your Honor. As being overbroad because it included, I think, intentional along with negligence or something. And there's a pattern jury instruction on comparative fault. And it's my understanding that your client then didn't request the pattern instruction. So if I think that there's case law, well, I think more than think, but that if you proffer something and it's rejected, and then you don't try to do something else, that can be used as a problem here. Your Honor, not quite. We proffered an instruction. And the proffer is at ER 437.2. The district judge denied our request for a comparative fault instruction at ER 35 and 42 on two legally erroneous grounds. Number one, she said, I can't instruct on comparative fault with respect to a party who is in the empty chair. The empty chair is not a potential, should not have a potential share of liability under the comparative fault statute. That's wrong. That's plainly wrong. Washington law expressly provides in case after case, Heiner is the case we cite at the blue brief at 43, absolutely, you can ascribe fault to someone who is not a party to an action or has some sort of immunity. So that was error number one. Error number two. Don't they at least need to be a party that has a duty? Your Honor, they do not. And I'm glad you asked that, because I went back to the statute. And there's extremely important language I want to call Your Honor's attention to. What we've cited is the comparative fault statute, which is RCW 4.22070. That's the one that says, in all actions involving fault of more than one entity, the trier of facts shall determine the percentage of total fault attributable to every entity which caused claimant's damages. But then, Your Honor, and here's the answer to your question, if you look at RCW 4.22.015, that's RCW 4.22015, that's the definition of fault. And here's what it says. It says, Fault is acts or omissions that are in any measure negligent or reckless toward the person or property of the actors or others. Or others. So it can be negligence toward others, not just a duty to the parties in the case. And, Your Honor, it also says unreasonable failure to avoid injury counts as fault. So, Your Honor, let's see what that language tells us. It tells us, first of all, that the comparative fault of the plaintiff, here, Doizend Remember, Doizend is the real plaintiff here. His assinees are here. But Doizend is a fault. Doizend is at fault. We put in copious evidence that he was at fault. He has a duty to his insurer to cooperate in reasonable settlements. He wants to proceed tooth by tooth, claim by claim, litigate every root canal on an individual basis. He cooperates with an attorney, his attorney, and we did mention both of them in the answer, Your Honor. His attorney clearly has an obligation to Doizend. So he has a duty to Doizend. Versnell, Doizend's attorney, the defense counsel we provided, he's negligent. Doizend is negligent. Versnell is negligent. To the extent that delays or failure to have a global settlement is the problem here. They're negligent, but we weren't allowed to ascribe comparative fault to them. Now, Your Honor, Judge Sotomayor, you may ask, well, what about these other parties? Longfelder, the plaintiff's attorney, he didn't have a duty to Doizend. He had a duty to his own clients. And if he was dilatory in sending files, he was violating his duty to his clients, and he was engaging in an act of recklessness toward others. But you admit you're getting a little more removed when you get to the lawyers? You bet. And if I go one step further to the new dentist who doesn't send the records, he's one step removed further. But, Your Honor, we didn't get to put anyone in the empty chair. We didn't get to ascribe a comparative fault to Doizend or his attorneys. And that alone is ground for reversal. Was there a problem? Would you concede there was a problem with your instruction? No, Your Honor. We don't think there's any doubt. Well, let's say I think there is. Then, Your Honor. Do you automatically lose or do you have another arrow in your quiver on that? Well, Your Honor, we don't. We think that we sought a legitimate instruction and it was rejected for legally erroneous reasons. The other one is the judge says I'll take care of that with mitigation of damages. That was legal error because comparative fault under Washington law is a liability determination. It goes to the jury. It goes to the jury. And it goes to the jury. We should have been allowed to say the percentage of fault, Doizend and Versnell contributed X percent of fault. So the grounds for the judge's rejection were erroneous, and therefore, there's no problem in our not following the pattern instruction. We're not required to follow the pattern instruction. Your Honor, I'm running out of time. I'd like to reserve three minutes for rebuttal. I'd like to leave you with one quick point about causation because causation is a very simple argument. I know I'm tilting uphill and trying to overturn a jury verdict, but the point about causation is there's a complete disconnect between any delays by Continental and these 29 plaintiffs. That's the disconnect on causation. Any delays pertain to the other 241 plaintiffs who settled. There was never any evidence that these plaintiffs would have settled within limits, and I'll be happy to elaborate on rebuttal. But did you set up causation in your 50A motion? Much more specificity with regard to causation in your summary judgment motion. That's correct, Your Honor, but we think we adequately preserved it. Thank you, Your Honor. I'd like to reserve the rest of my time for rebuttal.   Good morning. May it please the Court. My name is Leonard Feldman, and I'm counsel for the plaintiffs' appellees. Since we just left off with comparative fault, would that put you too much off your game if I took you right there? No, not at all. And I think Your Honor hit the nail on the head in one of your questions, which is that there is a requirement under Federal law as well as under State law that when a party proposes an alternative instruction, it has to be a legally correct instruction. And if you look at the Heiner case in particular, it makes very clear that when we're talking about comparative fault, it's not enough to just simply be in the room. There has to be a duty, and there has to be fault. And so the instruction that Continental proposed, and they're right, they don't have to use the pattern instruction, but they can't use one that's wrong. The instruction has to include the definition of fault that's set out in Heiner and the statutes that Ms. Sullivan mentioned. And there was no mention of that. If there should have been an instruction, I know your argument seems to be I struggle with how it would be harmless error if there should have been an instruction. And I think you point to the jury verdict that you seem to, because there was a special verdict with questions. I'm not sure I can ‑‑ I have trouble with that answering that question would have solved all the problems. Can you expand on that? There's two components to our harmless error argument. The first one relates to all of these individuals, and the second one relates solely to Dr. Dysand. The verdict form is unique in this case. It's not the kind of verdict form that we typically use. What it asks the jury to determine is the total damages caused by Continental's negligence or CPA violation. That language caused by is very significant because we know that the jury didn't award all of the damages that the plaintiffs requested. Somehow the jury came to a smaller number, to the penny on the CPA claim, and they were utilizing a special verdict form that had this language caused by. So if we assume ‑‑ Well, so, I mean, I guess what you're saying is that they could have just said that they wouldn't have come up with these if they didn't think that it was caused by the insurance company. But by the same token, if they're not given any instruction on how they might apportion it, you can't fault a jury for, you know, not coming up with its own idea about what they want to do. I mean, if you're not told, well, you can compare fault, because they don't have anything on that, right? Well, let me give you the other piece of our harmless error argument and then address the issue of these other individuals. For Dr. Dysand, there was an instruction that allowed the jury expressly to compare fault. That was the mitigation of damages instruction. And if you read that, it's at ER 136, the fair reading of that mitigation instruction was that the jury was to determine whether Dr. Dysand was And not to include those damages in the damages award, which appears to be what they did. As to the other individuals, the key here is that Washington That instruction is a little bit different than a comparative fault instruction. It is. It's not precisely the same. Do you find that Dr. Dysand failed to avoid or minimize the damages incurred by him? Right. There's not perfect symmetry, but it allowed the jury to determine whether Dr. Dysand was responsible. And I think the more significant point is it allowed Continental to argue its theory of the case in closing. And if there was any fault on Dr. Dysand's behalf, it was factored into the jury verdict. But the other point here is that Washington law has carefully constrained when a comparative fault defense applies. And in the Adcox decision and the Diaz decision, Washington What would the pattern instruction have allowed? Had that been given? I'm sorry. I don't know what the pattern jury instruction on comparative fault would have determined. But our argument is that You would have objected to that, too, right? Well, we did object to it. And the district court So you objected to both the pattern and their instruction? We objected to any comparative fault instruction at all in this case. Right. It was your position. Comparative fault didn't apply here. Right. For a couple of reasons. For a couple of reasons. One is that as to two of the individuals that was mentioned, that's Dr. Toh and Mr. Longfelder, there was no allegation that they were comparatively at fault. And Washington courts have said that the statute on comparative fault is not self-executing, and you have to have a claim. And as to all four of the individuals, Dr. Toh, Longfelder, Dysand, and Versnell, there wasn't any proof that they had done anything negligent. Versnell is the lawyer that Continental appointed to represent Dr. Dysand. There was testimony that he did a good job, not that he did a bad job. There was no expert testimony at all that would give rise to a comparative fault instruction. Dr. Toh didn't owe a duty to Dr. Dysand. Longfelder certainly didn't owe a duty to Dr. Dysand, nor was there any evidence that he was at fault or that he was liable. And Dr. Dysand gets picked up in the mitigation of fault instruction. Well, under Washington law, does comparative fault apply to statutory-based claims? Yes, it does. But the strain — doesn't the strain of causation run to all of those individuals as well? Well, that's a different issue, Your Honor. Why? This is the legal causation argument, and I would say a couple things about this. One is that legal causation was never argued in the JAMAL motion. Continental has said that it didn't need to raise it in its JAMAL motion because it raised it on summary judgment, but it wasn't raised there either. But when we're talking about, you know, did the chain of causation run through these individuals, the important point here is that our causation theory is quite simple, and it — at least the way we view it, and I know Continental disagrees, but the way we view it, it doesn't run through any of these individuals. What our experts said and our theory of the case was is that Continental should have recognized very early on in this process that Dr. Dysand had limited coverage and he was at risk for an excess verdict. So what they needed to do was they needed to jump in with a team of very experienced claims adjusters and get these claims against him settled while all these individuals were represented by Dr. Longfelder because they knew, and frankly, Dr. Dysand told them that Dr. — that Mr. Longfelder was settling for very small amounts. And so Dr. Dysand wrote emails to Mr. Hoffman and to Mr. Versnell who forwarded them to Mr. Hoffman saying, if we don't get these claims settled quickly, these patients are going to migrate to more aggressive doctors, and I'm — or more aggressive lawyers, and I'm going to be at risk for an excess verdict. So in our — So the damages that — well, the verdict that — and how you argued it that actually is before us is that because of the risk of going beyond the policy limits, that your client then got hit with the arbitration and then he put up, what, $4 million or $5 million of his own assets and then assigned — Right. — this claim to your clients to get the — because the verdict in the arbitration was more than this, right? Right. And it was — And so — but I guess from the — and so then they — Dr. Dysand testified as to how horrific this whole thing was for him, and that's — so you didn't get punitives, right? Correct. So the numbers that came up, what do they represent? Well, the numbers that came up really come out of the black box of the jury, so it's really hard to say what they do represent, but, you know, we have our theory. What did you argue? What we argued in closing was that if the jury found that there was a violation of the bad faith, CPA, or negligence, they should award the full amount of the arbitration verdict, which was $35 million. On the negligence claim, we argued that the jury could also award emotional distress damages, and on the CPA claim, we argued that the jury could also award economic losses that Dr. Dysand — And that would be the $4 million or whatever that was. Right. And what we believe happened was that the jury did what they were told on the CPA claim, but on the negligence claim, we believe what happened was the jury was misled by the references to the $16 million settlement figure. They subtracted the five that the plaintiffs have already recovered. They subtracted the million dollars that Judge Peckman also took off post-trial, and they awarded 10. But again, you know, that's my speculation. I do want to address the — Could you address judicial estoppel? That's exactly what I was about to say. Good. The judicial estoppel argument is not about the acceptance of coverage. That's not what it's about. When Ms. Sullivan tells you that they're being penalized for accepting coverage, that's just absolutely untrue. Judge Peckman was crystal clear in her articulation of her analysis on this issue, and she addressed all three of the prongs of judicial estoppel, and all three of them apply here. And certainly — Okay. Initially, Continental represented that coverage was not going to be an issue. However, when Continental later filed the affirmative defenses, it included fraudulent-based offenses. Following that filing, did the plaintiffs seek clarification from Continental regarding whether coverage was going to be an issue? And if so, can you point in the record where that would be? Coverage was never an issue. That wasn't the problem for judicial estoppel. The problem for judicial estoppel is that Continental said, because coverage isn't an issue, we don't have to produce our coverage files. It wasn't that they were saying coverage isn't an issue. It's what they were using that for. So they took the position that their coverage documents were immaterial. That's the discovery issue that Judge Peckman identified. And they did that successfully. And the unfairness to the plaintiffs is manifest, because we know from Continental's category-by-category privilege log, and we know from documents that it produced, that it was redacting massive amounts of information that we would have needed, as Judge Peckman found, to show ---- Well, arguably, affirmative defenses suggest that coverage may be an issue in the case. So why shouldn't the plaintiffs have been required to make an inquiry to Continental's true position on coverage and renew its previous motion to compel coverage-related documents before Continental is judicially estopped? Well, the answer, Your Honor, is that Continental's position early on was that coverage wasn't an issue. And its position later in the case is that coverage wasn't an issue. That never changed. So there was nothing for us to inquire. Yeah, but they were pretty ---- It didn't take them long to begin to figure out they needed to point some fraudulent accusations against doctors. And when they did that, it was in their summary judgment motion. Fraud was not asserted as an affirmative defense in their answer. It was in their summary judgment motion. And for the first time, they argued that there was a defense to the extra contractual claims because of fraud in the adjustment process. And as Judge Peckman recognized, Discovery had closed by this point, and it was far too late to reopen Discovery, have Continental produce these documents that it withheld. And when Ms. Sullivan says they didn't withhold documents, that's not true either. And Judge Peckman said that. They were withholding coverage-related information as privileged. And Sedell, the Washington Supreme Court's decision in Sedell, makes very clear that those are the documents that need to be produced in a bad-faith action because they are essential to the plaintiff's bad-faith claim. So it was only by conceding coverage at the beginning and throughout the case that Continental was able to withhold this information. And I'll tell you, the fact that they weren't- Roberts. Was it a surprise that at the summary judgment, in their summary judgment motions, they begin to point the finger at Dr. — at the doctors? I can't tell you whether it was a surprise or not, but I don't believe that whether it was or wasn't is the issue. The issue is that they had not produced these documents, and we needed these documents to address the materiality issue relating to the fraud. And if I could just address that very quickly, Ms. Sullivan says that Washington courts are actually open to this issue. It's important to point out that no Washington court has ever applied a fraud defense in a case involving professional malpractice insurance. And as Judge Peckman explained, there are reasons why it shouldn't apply in third-party coverage cases, because you have a policyholder who obviously is working with the insurance company to defend his conduct. But factually, the Kee Sin Kim case that Ms. Sullivan mentioned, what's important about that is it makes clear that materiality has to be addressed from the standpoint of the insurer. And so, again, we go back to the estoppel point, because the documents that we needed to address materiality were the ones that Continental withheld. But we do have some documents. We have Exhibit 31, which is a letter that Versnell sent to Continental where he acknowledges that there are issues regarding fabricated dental records and unnecessary root canals. And we've got the unredacted portion of SER 90, which I would encourage you to look at, because it shows you what information was being redacted, the entirety of the coverage information. But it says that the insured has admitted to probable liability. And then we have Trial Exhibit 70, in which Dr. Dyson begs Continental to settle. And with that understanding, Continental made a deliberate decision to accept coverage. And the reason they did that, and I think this is an important point and then I'll sit down, is that under Washington law, when you accept coverage, you control the defense. What they wanted to avoid was a reservation of rights, which they could have done on the dental fraud issue. But if they had done a reservation of rights, Dr. Dyson would have controlled his defense and he could have paid out the full $8 million to settle these claims. Continental wanted to hang on to its money as long as it possibly could. And it did that to the substantial detriment of its policyholder. And that, Your Honor, is why we submit that the jury verdict should be upheld. Thank you. Okay. Thank you. Your Honor, I want to cover all of the points of preservation. First, we preserved our legal causation argument. It's in the further excerpts of record at 58. In any event, it's a legal argument that goes to the court and not the jury. We preserved our causation argument in our 50A. In answer to Judge Piazza's question, the relevant pages are the 120-15 transcript at 227 to 228 and the judge's 50A ruling rejecting our causation argument on 50A. That's in excerpts of record at 312 to 314. So we preserved legal causation. We preserved factual causation. That's not in question. Second, I was surprised to hear my colleagues say that we hadn't preserved the fraud defense in our answer. That's incorrect. If you look at supplemental excerpts of record 77 to 78, you will see that we pleaded our fraud defense in our answer. And there's no dispute that we turned over our coverage documents after the answer. The nondisclosure of coverage came before the answer. After the answer, their only objection is we redacted for attorney-client privilege. We're entitled to do that. Your Honor, as to the comparative fault instruction, if you go back to our instruction, we don't think it's erroneous. It did not contain any error as to intentionality. That's not in there. It's just a modification of the pattern instruction. But even if it had been erroneous, the district court was obligated to give it in corrected form, not to refuse to give it altogether. On the question of whether there was somebody with a duty who should have been assigned comparative fault or we should have been permitted to show comparative fault, there's no question that Doizend had a duty to Continental. That's provided by Washington law 48.30a.005. That's RCW 48.30a.005. That says the insured has a duty of candor and honesty in relation to the insured. What about the duty of other people? Well, the others, Your Honor, certainly Versnell had a duty to Doizend. So there's duties at least as — that are relevant to the actors in this case as to both Doizend to us and Versnell to Doizend. So even if you think Longfellow and Towe are too attenuated, we still were entitled to a comparative fault instruction that got those two people in the chair. And last, Your Honor, on judicial estoppel, I want to cut through all the stuff about the discovery. The point is you do not want to say in conflict with Washington law that by accepting coverage, we were deprived of asserting Doizend's fraud on us as an affirmative defense to extra-contractual liability. It would go against Washington policy. It would be a form of judicial aiding and abetting of fraud on an insurer. This is a dentist who performed unnecessary root canals. He was adjudicated at ER 667 to 68, adjudicated as having committed fraud on his patients. He is a stop, as we come to this Court, he's a stop from denying fraud on his patients. He also, it's undisputed, he committed fraud on us. The evidence is undisputed that he never told us anything other than I never did anything wrong. So it's improper for this $17.5 million windfall to a tortfeasor in violation of Washington law to have come about through the errors in this trial. And at a minimum, you should, we respectfully suggest or request that you remand for a new trial where we could have a comparative fault instruction and be permitted to tell the jury about our fraud defense. My colleague made arguments about how the others really weren't to blame. Continental was more blameworthy. Fine. Tell it to the jury, but let us have a fair trial. Thank you, Your Honors. Thank you. Thank you, counsel. A very interesting case. The matter is submitted. And that ends our session for today and for the week, and we're all going home.
judges: Paez, Callahan, Selna